UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHAEL HILL,

Plaintiff,

— against —

HOWARD SILVERBERG, et al.,

Defendants.

—CV—
JURY TRIAL
DEMANDED



U.S. DISTRICT COURT - N.D. OF N.Y.

FILED

AUG 1 0 2015

AT _____ O'CLOCK
Lawrence K. Baerman, Clerk - Syracuse

9:15-cv-971

# PLANTIFF'S PRO-SE AFFIRMED VERIFIED COMPLAINT...

MICHAEL HILL

CC:
ATTORNEY GENERAL'S OFFICE
THE CAPITOL, ALBANY, NY 12224

# Table of Contents

Affirmation .................................................. 1

Jurisdiction & Venue ..................................... 2

Supplemental State Claims 28 USC § 1367 ........... 3

Parties to this Action .................................... 2-5

Statement of Facts ....................................... 6-12

## Legal Claims

First Cause of Action: Retaliation for filing grievances and Law Suits .......................... 12-17

Second Cause of Action: Unequal Treatment 14th Amendment Equal Protection Claim ........... 17-23

Third Cause of Action: Unnecessary and Excessive Use of Force ........................................ 24-26

Fourth Cause of Action: False Misbehavior Report Written in Retaliation ....................... 26-28

Fifth Cause of Action: Procedural & Substantive Due Process Violations ............................. 28-32

Sixth Cause of Action: Denial of Adequate Medical Treatment and Tampering with Medical Reports and X-Rays ............................... 32-36

Seventh Cause of Action: Failure to Supervise, Discipline and Train ............................... 36-39

INJURIES SUFFERED BY PLAINTIFF ...................................... 39-40

EXHAUSTION OF REMEDIES ............................................ 40

RELIEF REQUESTED ................................................. 40-41

VERIFICATION ..................................................... 41-42

UNITED STATES CONSTITUTIONAL AMENDMENTS CITED: FIRST, FIFTH, EIGHTH AND FOURTEENTH

NEW YORK STATE CONSTITUTIONAL SECTIONS CITED: ARTICLE I, § 1, 5, 8, 9, and 11.

PREVIOUS LAW SUIT RETALIATORY ACTION TAKEN UPON: HILL v. LaPOINT, et al. N.D.N.Y. 12-CV-0702 ........................................................... 6, 13, 34

APPENDIX ATTACHED ..........................................

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHAEL HILL,
                                                            -CV-
            PLAINTIFF              AFFIRMED VERIFIED
    -AGAINST-                      CIVIL COMPLAINT
HOWARD SILVERBERG, FACILITY DOCTOR;     42 U.S.C. § 1983
CHRISTOPHER W. HALL, ASSISTANT ATTORNEY GENERAL,
J. ANTHONY JORDAN, DISTRICT ATTORNEY,
PAUL R. FRITIOIOSI, COUNTY INVISTIGATOR,
COUNTY OF WASHINGTON, WASHINGTON COUNTY,
D       JAKSON, REGISTERED NURSE,
PAUL ZDRNTSKI, CORRECTIONAL LIEUTNANT,
EUGENE RAIMO, CORRECTIONAL GUARD,
JOHN SMITH, CORRECTIONAL GUARD,
JAMES HUNTINGTON, CORRECTIONAL GUARD,
LAURA JONES, CORRECTIONAL GUARD,
ANTHONY J. ANNUCCI, COMMISSIONER OF DOCCS,
K. NASSIVERA, INMATE DISCIPLINARY ASSISTANT,
            DIRECTOR OF SPECIAL HOUSING,
BRIAN BAUERSFEILD, COMMISSIONER HEARING OFFICER;
            DEFENDANTS.

STATE OF NEW YORK ) SS.:
COUNTY OF CHEMUNG )



        I, MICHAEL HILL, BEING DULY
SWORN AFFIRMS UNDER THE
PENALTIES OF PERJURY PURSUANT TO
28 U.S.C. § 1746, THAT THE
FOLLOWING IS TRUE & EXACT:

# I.    JURISDICTION & VENUE

1. THIS AFFIRMED VERIFIED COMPLAINT COMMENCES THIS CIVIL RIGHTS ACTION AUTHORIZED BY 42 U.S.C. § 1983 TO REDRESS THE DEPRIVATIONS, UNDER COLOR OF STATE LAW, OF RIGHTS SECURED BY THE CONSTITUTION OF THE UNITED STATES. THIS COURT HAS JURISDICTION UNDER 28 U.S.C. §§ 1331 AND 1343 (a)(3) AND (4). THE PLAINTIFF SEEKS DECLARATORY RELIEF PURSUANT TO 28 U.S.C. §§ 2201 & 2202. PLAINTIFF'S CLAIMS FOR A PRELIMINARY INJUNCTIVE RELIEF ARE AUTHORIZED BY 28 U.S.C. §§ 2283 & 2284, AND RULE 65 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

2. THE COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS UNDER 28 U.S.C. § 1367. THE VENUE OF THIS ACTION PROPERLY LIES WITHIN THIS DISTRICT PURSUANT TO 28 U.S.C. § 1391 (b)(2), BECAUSE OF THE EVENTS GIVEN RISE TO THIS ACTION OCCURRED AT GREATMEADOW CORRECTIONAL FACILITY WHICH IS LOCATED IN THE NORTHERN DISTRICT OF NEW YORK.

# II.    PARTIES TO THIS ACTION

3. NAME OF DEFENDANT: KEVIN NASSIVERA
OFFICIAL POSITION: INMATE DISCIPLINARY ASSISTANT
SUED IN: INDIVIDUAL CAPACITY
ADDRESS:    GREATMEADOW CORRECTIONAL FACILITY,
P.O. BOX 51, COMSTOCK, NY 12821

4. THE Plaintiff, MICHAEL HILL, an ▮. PRISONER who had been during his time of incarceration housing under the care and custody of the NewYork State Department of Correction & Community Supervision, at the Relevant times to the Events herein mentioned MR. HILL was being held at Greatmeadow correctional facility, P.O. Box 51, Comstock, NY 12821.

5. Name of Defendant: Howard Silverberg
Official Position: Doctor
Sued In: individual capacity
Address: Greatmeadow correctional facility, P.O. Box 51, Comstock, NY 12821

6. Name of Defendant: D      Jackson
Official Position: Registered Nurse
Sued In: individual capacity
Address: Greatmeadow correctional facility, P.O. Box 51, Comstock, NY 12821

7. Name of Defendant: Christopher W. Hall
Official Position: assistant attorney General
Sued In: individual & official capacity
Address: office of attorney General, The Capitol, Albany, NY 12224

8. Name of Defendant: Paul R. Frettoioso
Official Position: County Investigator

SUED IN: INDIVIDUAL CAPACITY
ADDRESS: 383 BROADWAY BUILDING C,
FORT EDWARDS, NY 12828

9. NAME OF DEFENDANT: PAUL ZARNITSKI
OFFICIAL POSITION: CORRECTIONAL LIEUTENANT
SUED IN: INDIVIDUAL CAPACITY
ADDRESS: GREAT MEADOW CORRECTIONAL FACILITY,
P.O. BOX 51, COMSTOCK, NY 12821

10. NAME OF DEFENDANT: EUGENE RAIMO
OFFICIAL POSITION: CORRECTIONAL GUARD
SUED IN: INDIVIDUAL CAPACITY
ADDRESS: GREAT MEADOW CORRECTIONAL FACILITY,
P.O. BOX 51, COMSTOCK, NY 12821

11. NAME OF DEFENDANT: JOHN SMITH
OFFICIAL POSITION: CORRECTIONAL GUARD
SUED IN: INDIVIDUAL CAPACITY
ADDRESS: GREAT MEADOW CORRECTIONAL FACILITY,
P.O. BOX 51, COMSTOCK, NY 12821

12. NAME OF DEFENDANT: JAMES HUNTINGTON
OFFICIAL POSITION: CORRECTIONAL GUARD
SUED IN: INDIVIDUAL CAPACITY
ADDRESS: GREAT MEADOW CORRECTIONAL FACILITY,
P.O. BOX 51, COMSTOCK, NY 12821

13. NAME OF DEFENDANT: LAURA JONES

OFFICIAL POSITION: CORRECTIONAL GUARD
SUED IN: INDIVIDUAL CAPACITY
ADDRESS: GREAT MEADOW CORRECTIONAL FACILITY,
P.O. BOX 51, COMSTOCK, NY 12821.

14. NAME OF DEFENDANT: J. ANTHONY JORDAN
OFFICIAL POSITION: DISTRICT ATTORNEY
SUED IN: INDIVIDUAL & OFFICIAL CAPACITY
ADDRESS: DISTRICT ATTORNEY OFFICE, 383 BROADWAY
BUILDING, FORT EDWARDS, NY 12828

15. NAME OF DEFENDANT: WASHINGTON COUNTY
OFFICIAL POSITION: COUNTY OF WASHINGTON
SUED IN: INDIVIDUAL & OFFICIAL CAPACITY
ADDRESS: 383 BROADWAY - BUILDING B
FORT EDWARDS, NY 12828

16. NAME OF DEFENDANT: ANTHONY ANNUCCI
OFFICIAL POSITION: COMMISSIONER OF DOCCS
SUED IN: INDIVIDUAL CAPACITY
ADDRESS: HARRIMAN CAMPUS Bldg #2, 1220 WASHINGTON
AVENUE, ALBANY, NY 12226

17. NAME OF DEFENDANT: BRIAN BAUERSFELD
OFFICIAL POSITION: COMMISSIONER'S HEARING OFFICER
SUED IN: INDIVIDUAL CAPACITY
ADDRESS: HARRIMAN CAMPUS Bldg #2, 1220 WASHINGTON
AVENUE, ALBANY, NY 12226

18. NAME OF DEFENDANT:
OFFICIAL POSITION: DIRECTOR OF SPECIAL HOUSING
SUED IN: Individual & Official capacity
ADDRESS: Harriman campus Bldg #2, 1220 Washington
Avenue, Albany, NY 12226

EACH DEFENDANT HEREIN IS IDENTIFIED by
their Race as county and state EMPLOYEES,
who deliberately treated plaintiff different
as a class of one (black african/american)
irrationally and without cause too.

III. STATEMENT OF FACTS
19. On or about APRIL 28, 2015, Plaintiff was
picked up at AUBURN correctional facility
and transferred upon a WRIT of habeas
corpus adtestificandum to appear at the
united states DISTRICT COURT HOUSE FOR the
NORTHERN DISTRICT in Albany, by Hon.
DISTRICT Judge BRENDA K. SANNES to
begin trial.
[" plaintiff's appendix EXHIBIT __0__, ___"].

20. DEFENDANT RAIMO UPON RECOGNIZING
Plaintiff IMMEDIATELY SPREAD the word
to other guards, These guards began to
harass Plaintiff based on their knowledge
from RAIMO that he had RETURNED to
facility to attend a CIVIL trial at the

NORTHERN DISTRICT COURT [" HILL V. LAPOIT, et al, 12-CV-0202 DKT.NO.# ___ "]. THESE GUARDS MADE IT VERY CLEAR that INMATES ARE USUALLY PROVIDED COURT CLOTHING ON REQUEST, but SINCE HE WAS NOT LIKED by EUGENE RAIMO IT WAS a FACT HE WOULD NOT BE ISSUED ANY CLOTHES to WEAR to COURT, ESPECIALLY SINCE the JUDGE'S ORDER did NOT STATE IT WAS REQUIRED. ALTHOUGH ALL OTHER INMATES WERE GIVEN THESE COURT CLOTHES WITH NO ORDER. (" PLAINTIFF'S APPENDIX EXHIBIT _G_, _I_, _O_ ").

21. THE TRIAL COMMENCED ON MAY 4 2015, WITH DEFENDANT DOCTOR HOWARD SILVERBERG TESTIFYING FOR SEVERAL HOURS IN REGARDS to his MEDICAL FAILURES. [" SEE. PLAINTIFF'S APPENDIX EXHIBIT _O_, ALSO SEE, TRIAL TRANSCRIPTS "].

22. ON OR ABOUT MAY 18, 2015, WHILE PLAINTIFF WAS STILL being HELD AT GREATMEADOW FACILITY PRESUMABLY UNDER COURT HOLD STATUS, IN ISOLATED MENTAL HEALTH QUARANTINE SECTION OF E-8 COMPANY. HE HAD NO CHANGE OF CLOTHES OR UNDER GARMENTS, WHICH CAUSED PLAINTIFF to APPLY FOR EMERGENCY CLOTHING FROM THE FACILITY STATE SHOP ONLY to BE INFORMED by THE CIVILIAN EMPLOYEE THERE, his STATUS had CHANGED, HE WAS NO LONGER'

being held at the facility on court hold status, but rather as an inmate on medical hold ordered by HOWARD SINERBERG.

23. Defendant HOWARD SINERBERG's medical hold was clearly irrational, and was done to force the plaintiff to be held under harsh condition he over heard him complain about at trial. In addition he sought allow the guards to beat the the plaintiff because of the suit against him, and the allegations in it. He did so, with the intentions of covering up the entire situation from his medical area. SINERBERG, clearly knew RAIMO, ASHLINE, and MULLIGAN wanted to assault plaintiff, as it was **DISCUSSED** at DEPOSITION and in answer to summary judgment in HILL v. LAPOIT, 12-CV-0202. DKT. no# ___. ["PLAINTIFF'S APPENDIX EXHIBIT E, F, H, also TRIAL TRANSCRIPTS"]

24. After plaintiff submitted GRIEVANCE GM# 59,596-15, against guards for DENYING him court clothes. THE DEFENDANT LAURA JONES was DIRECTED by her CO-WORKERS who were MENTIONED IN PREVIOUS grievances to INITIATE a USE OF FORCE so they could assault plaintiff on May 21, 2015.

25. DEFENDANT LAURA JONES BOTCHED the assault set up, she blundered it by allowing the Plaintiff to side step her after she shoved him, and Rammed her baton into his testicles. Plaintiff made it into the mess-hall where a large number of prisoners were able to witness exactly what she was attempting to do.

26. THE Messhall Sergeant Reynolds was called by the Plaintiff immediately upon him exiting the messhall, because defendant Jones had stopped Plaintiff, and began to give him unreasonable orders such as 'Bend over touch your toes, get on the wall and spread 'em...' Sergeant Reynolds instructed defendant Jones to take Plaintiff's legal documents consisting of letters from lawyer Brian W. Matula, court notices and appeal papers Relevant to [" HILL v. LaPOIt, 12-cv-0202 "]. they did this recognizing Plaintiff had a call out, and was on his way to the law library to finish drafting his appeal and destroyed these items. She did this infront of Plaintiff, daring him to move from the wall. Plaintiff was then placed in Restraints and taken back to his cell pending a false Report by JONES, who was instructed to pick charges to make it

d TIER II, SO OTHER GUARDS COULD ASSAULT PLAINTIFF BECAUSE SHE MESSED IT UP. [" PLAINTIFF'S APPENDIX EXHIBIT <u>A</u>, <u>C</u> "].

27. DEFENDANTS RAIMO, HUNTINGTON, SMITH and OTHER UNKNOWN GUARDS ESCORTED THE PLAINTIFF FROM E·BLOCK 8·COMPANY 39· CELL TO COMMENCE THE TIER III HEARING ON THE TICKET THEY HAD JONES FABRICATE. RAIMO and HUNTINGTON Called TO MAKE SURE DEFENDANT ZARNETSKI DID NOT ORDER ANY OTHER INMATES BE PRESENT, and THAT THE AREA REMAIN SECLUDED, UPON CONFIRMATION DEFENDANT OBTAINED PLAINTIFF THEN DID VICIOUSLY ASSAULT HIM.

28. DEFENDANT PAUL ZARNETSKI PARTICIPATED IN THIS ASSAULT and HELPED THE OTHERS LINE IT UP. HE COMMENCED THE HEARING AT ABOUT 1:15 PM and DID NOT ASK ANY OF THE GUARDS IN THE ROOM TO IDENTIFY THEMSELVES. HE ASKED PLAINTIFF TO TELL HIS SIDE OF THE STORY, THEN WHEN PLAINTIFF REQUESTED INMATE WITNESSES and THE AUTHOR OF THE REPORT. DEFENDANT ZARNETSKI adJOURNED THE HEARING TELLING THE GUARDS THEY HAD FIVE MINUTES TO HURRY UP. JAMES HUNTINGTON SWUNG CONNECTING WITH PLAINTIFF'S TEMPLE. DEFENDANT RAIMO SWUNG HITTING HIS RIGHT JAW. PLAINTIFF

was brutally assaulted with a dozen or so other guards joining in. The Defendant Paul Zarnetski kicked plaintiff's groin area, then the side of his head and chest several times.

29. Defendant Nurse D. Jackson a pro-white prison employee falsified medical injury reports to cover up the assault, and did clearly lie in the reports alleging she provided plaintiff ice for the swellen to his head, checked his vitals, pulse, blood pressure and heart rate — when she clearly did not. Defendant Jackson based on guards orders only reported injuries to left side of body, and did not dowment eyes, or possible fracture to right chest area and sternum.
("Plaintiff's appendix Exhibit A,L also see video tape recording from incident to SHU").

30. On or about May 26, 2015, plaintiff had x-rays taken at greatmeadow correctional facility while being held in SHU pending false charges. Defendant Silverberg designated another subordinate medical employee to take x-rays, but Silverberg did not dowment the results of the radiological request x-rays — and,

INSTEAD MADE THEM COME UP MISSING FROM PLAINTIFF'S MEDICAL FILES. THIS PREVENTED THE MEDICAL STAFF AT AUBURN CORRECTIONAL FACILITY TO BE ABLE TO TREAT PLAINTIFF'S PAINS AND INJURIES. THE DEFENDANT SILVERBERG'S ACTIONS WAS DIRECTLY TO HIDE THE INJURIES PLAINTIFF SUFFERED, WHICH WOULD HAVE UNDOUBTEDLY SHOWN THE GUARDS STORY TO BE INCONSISTENT.

31. DEFENDANTS **FILED** A FALSE RETALIATORY MISBEHAVIOR REPORT BECAUSE OF PLAINTIFF'S CIVIL SUIT AGAINST EMPLOYEES AT THE FACILITY. THIS CAUSED LEGAL DOCUMENTS TO BE DESTROYED AND ACCESS TO LAW LIBRARY TO PERFECT APPEAL TO BE TAKEN AWAY. SILVERBERG TESTIFIED AT TRIAL BECAUSE OF THE SUIT PLAINTIFF WAS APPEALING, AND DEFENDANTS RAIMO AND ZARNETSKI DID INTENTIONALLY LIE IN THE REPORT TO COVER UP THE ASSAULT.

35. DEFENDANT COUNTY OF WASHINGTON, AND J. ANTHONY JORDAN, WERE CONTACTED BY THE PLAINTIFF TO FILE FELONY COMPLAINT TO BE INVESTIGATED AND PROCESSED CONCERNING WHITE PRISON GUARD FOR RACIST GANG ASSAULT, FALSIFYING BUSINESS RECORDS, ETC. THE DEFENDANT REFUSED TO SPECIFICALLY PROCESS, FILE OR INVESTIGATE PLAINTIFF'S FELONY COMPLAINT

SOLELY BECAUSE HE WAS AN BLACK AFRICAN-AMERICAN lodging complaints aaainst WHITE PRISON GUARDS.
("PLAINTIFF'S APPENDIX EXHIBIT I, K").

34. DEFENDANT J. ANTHONY JORDAN actions are not of a PROSECUTORIAL NATURE, and are instead of a POLICE NATURE. THE PROMPT and EFFICIENT OPERATION OF THE DISTRICT ATTORNEY OFFICE to RESOLVE THE INVESTIGATION OF LEGITIMATE FELONY COMPLAINTS, WAS IGNORED by him IRRATIONALLY and LACKING IN REASONABLE GOVERNMENT INTEREST.

IV.  LEGAL CLAIMS
35. PLAINTIFF RE-alleges and INCORPORATES by REFERENCING his allegations IN PARAGRAPHS [" 1- through 34"], as IF FULLY STATED HEREIN.

36. AS a FIRST CAUSE OF ACTION, THE PLAINTIFF CLAIMS that HE WAS " SUBJECT TO RETALIATION FOR FILING GRIEVANCES and LAW SUIT HILL V. LAPOIT, 12-CV-0202 N.D.N.Y." PURSUANT TO THE FIRST and FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, and NEW YORK STATE CONSTITUTION ARTICLE I, § 8, 9.

37. PLAINTIFF CONTENDS that DEFENDANTS SINERBERG, Hall, ZARNETSKI, RAIMO, SMITH,

HUNTINGTON, JONES, ANNUCI, BAURSFELd, and
_____ (SUBORDINATE PERSONNEL) and
EACH OF THEM acting both individually and
in concert of actions wherein said DEFENDANTS
acquiesced, condoned, encouraged and assisted
the actions of the others in a deliberate
EFFORT to punish and inflict Physical
and mental Pain upon the Plaintiff FOR
filing grievances and lawsuit ["HILL V.
LAPOH, 12-cv-0202 N.D.N.Y."]
["Plaintiff's appendix EXHIBIT # , C , O "].

38. DEFENDANT Howard SILVERBERG EXERCISED
deliberate indifference to Plaintiff's Health
and Safety, when he altered the WRIT OF
habeas corpus court Hold issued by the
NORTHERN DISTRICT Judge BRENDA K. SANNES,
changing it to a medical hold. DEFENDANT
SILVERBERG did this because he heard
Plaintiff address the court about his
conditions being harsh over at the Jail,
and he knew the guards were seeking
to beat Plaintiff, because he said Plaintiff
was not liked by them.

39. DEFENDANT Howard SILVERBERG knowingly,
willingly and unlawfully Retaliated, where
he was the main Defendant in the case
HILL V. SILVERBERG, (N.D.N.Y. 12-cv-0202).

who after DIRECT EXAMINATION and CROSS-EXAMINATION concerning allegation of his misconduct, returned to the facility where Plaintiff was being held and instructed he be put under medical hold. Defendant SILVERBERG had no sound rational reason for ordering this hold. The labs he alleged to have examined BLOOD TEST, URINE TEST and E.K.G. REPORTS FROM a different facility taken on APRIL 15, 2015, had already been reviewed and decided by the DOCTOR at AUBURN CORRECTIONAL FACILITY. NONE OF THE labs reviewed had any substantial substance on Plaintiff's GASTRIC INTESTINAL disorder, and was unnecessary to place Plaintiff under a hold to REVIEW.
[" PLAINTIFF'S APPENDIX EXHIBIT E, F, I "].

40. DEFENDANT HOWARD SILVERBERG, unlawfully, and RECKLESSLY had the X-Rays taken of Plaintiff after the PRISON GUARD'S assault come up missing from MEDICAL FILES, preventing medical personnel at Plaintiff's housing facility AUBURN CORRECTIONAL FACILITY to be able to treat his pains and INJURIES. DEFENDANT SILVERBERG's actions were deliberate, and of CRIMINAL nature to hide the INJURIES inflicted upon the Plaintiff, so they would not be used to show the GUARD'S STORY was totally INCONSISTENT with what actually took place.

41. DEFENDANT D. JACKSON EXERCISED DELIBERATE INDIFFERENCE IN A CRIMINALLY RECKLESS MANNER, WHERE SHE FAILED TO ADEQUATELY ASSESS THE PLAINTIFF'S MEDICAL CONDITIONS. SHE DID NOT THOROUGHLY REPORT HIS INJURIES AND HAVE HIM EXAMINED CORRECTLY TO COVER UP THE FACT HIS INJURIES WERE INCONSISTENT WITH THE GUARDS STORY.

42. ON MAY 23, 2015, UNDER THE WATCHFUL EYE OF A VIDEO CAMERA, DEFENDANT NURSE D. JACKSON DELIBERATELY FAILED TO PROVIDE ANY MEDICATION FOR PLAINTIFF'S PAIN, SWELLEN, BRUISES AND HEAD TRAUMA. DEFENDANT JACKSON DENIED HIM TREATMENT SO AS TO BE ACCEPTED BY THE GUARDS DUE TO PEER PRESSURE, AND SHE REFUSED TO DOCUMENT PLAINTIFF'S RIGHT CHEST RIB AREA MAY HAVE BEEN FRACTURED AND STERNUM.

43. DEFENDANT JACKSON INTENTIONALLY FALSELY REPORTED THAT SHE CHECKED PLAINTIFF'S BLOOD PRESSURE, PULSE, NEUROS AND HEART RATE. THIS NURSE FURTHER FALSE STATED SHE PROVIDED ICE FOR BUMP ON HIS HEAD. ALL HER ACTION(S) WERE UNDER VIDEO CAMERA RECORDING, AND ILLUSTRATES THAT SHE GAVE NO ICE, NO MEDICINE AND DID NOT CHECK PLAINTIFF'S VITALS. HER LIES IN THESE DOCUMENTS WERE TO ACT ON

behalf of guards who beat Plaintiff unlawfully for filing grievances and law suit.
["Plaintiff's appendix Exhibit A, H see video tape"].

44. Defendant Raimo deliberately exercised indifference, knowingly, willingly and unlawfully by retaliating against the Plaintiff for the filing of grievances GM#54,128-12, GM#54,224-12, Complaint number #12-1406 to Investigator Marra, GM#59,396-15, GM#59,441-15 and civil law suit Hill v. Lapolt, by spreading the word to other guards to harass the Plaintiff and beat him.

45. Defendant Raimo upon the Plaintiff's return to Greatmeadow to attend the civil trial at the Northern District Court House for ["Hill v. Lapolt, et al. 12-cv-0202"], had other guards deny court clothing to him so that when he went to trial the jury could see he was in prison.
["Plaintiff's appendix Exhibit G"].

46. Defendant Raimo deliberately acted in concert with Huntington and Zarnetski to assault the Plaintiff for filing of grievances and law suit. Raimo had the Defendant Zarnetski arrange d Tier II

hearing proceeding, to which he had Zarnetski design ate him to escort the plaintiff. upon the adjourning of the hearing defendant Zarnetski gave the order to assault plaintiff telling Raimo he had five minutes to hurry up. plaintiff was brutally attacked by Huntington and Raimo with Zarnetski and Smith. They punched, kicked, stomped and hit plaintiff with sticks calling him monkeys and niggers.

47. all the defendants actions were in retaliation where plaintiff was in that exact facility for the law suit he filed against employees there. Raimo while striking plaintiff told other guards entering the assault, that plaintiff was the type who likes to file grievances and law suit but lose, he didn't win. Raimo shouted punching him in the face and eye.

48. AS a second cause of action, the plaintiff claims that he was "subjected to unequal treatment by direct violation of his civil Rights," pursuant to 14th amendment equal protection of law. Each and every defendant treated plaintiff as a class of one different from pro-white christian inmates pending civil court proceedings, and different from

white americans filing criminal complaints without a rational basis.

49. Plaintiff also alleges the New York State Constitution article I, § 1, 11, for equal protection law where defendants treated plaintiff different than white americans because he was a black african/american, and they had no legitimate reason for doing so.

50. Defendants Raimo, Huntington, Smith and Zarnetski acted with racist indifference where they racially and assaulted the plaintiff calling him monkeys and niggers each time they struck him with a blow.

51. Defendant County of Washington knowingly, willingly, and recklessly exercised indifference through following a blanket policy created by the district attorney to ignore its duty to the impartial administration of justice. Where the defendant has refused to file, process, or investigate the felony complaints plaintiff had submitted against pro-white prison guards for racist and assault.
["Plaintiff's appendix exhibit K, N "].

52. Defendant County of Washington in 2015, allowed the DISTRICT ATTORNEY'S OFFICE to promulgate a WRITTEN POLICY stating, inter alia, that the POLICE are DIRECTED not to ENTERTAIN " COMPLAINTS " OR "CROSS-complaints" from black African/americans HOUSED at GREATMEADOW PRISON. DEFENDANT FRETTOIOSO the COUNTY INVESTIGATOR IS FULLY aware FROM the Racial Make-up of the PRISON Population that the Majority of the PRISONERS HOUSE d at GREATMEADOW are black. and the Guards are WHITE hillbillies. He KNEW the Plaintiff was alleging he was assaulted by these Racist Guards operating in a WHITE biker type Gang. STILL he followed the DISTRICT ATTORNEY'S POLICY on behalf of the COUNTY OF Washington and REFUSED to FILE, PROCESS, OR INVESTIGATE PLAINTIFF'S COMPLAINTS. (SEE, Plaintiff's appendix EXHIBIT I, K, N ).

53. FOR THE above REASON(S) the DEFENDANTS PAUL FRETTOIOSO, and the COUNTY OF Washington acts of failing to INVESTIGATE and PROCESS FELONY Complaints by a black African/american who SPECIFICALLY told them he had been Gang assaulted by WHITE Racist PRISON Guards, IN DIRECT Retaliation FOR filing a law suit he lodged against EMPLOYEES at the PRISON, was deliberate and not in good faith.

(SEE, PLAINTIFF'S APPENDIX EXHIBIT I, K, N ).

54. DEFENDANT J. ANTHONY JORDAN EXERCISED DISCRIMINATIVE INDIFFERENCE, WHERE HE WAS GIVEN NOTICE THAT RACIST GANG ASSAULTS WERE OCCURRING AGAINST BLACK AFRICAN/AMERICANS OVER AT GREATMEADOW, AND WHEN PLAINTIFF SUBMITTED HIS COMPLAINTS, DEFENDANT JORDAN DID NOT EVEN CONSIDER THEM FOR INVESTIGATION TO MAKE AN INFORMED DECISION OF WHETHER THESE CRIMES WERE TAKING PLACE AGAINST BLACKMEN IN THAT PRISON BY WHITE GUARDS FOR RACIST REASONS, WHICH WOULD'VE REQUIRED ACTION.

55. DEFENDANTS J. ANTHONY JORDAN AND PAUL FRETTOLOSO BOTH ACTED WITH CRIMINAL RECKLESS- NESS, AND WERE NOT ACTING IN A PROSECUTORIAL CAPACITY, BUT INSTEAD IN THE ROLE OF POLICE REQUIRED TO PROCESS AND INVESTIGATE FELONY COMPLAINTS. ON OR ABOUT JUNE 2015, THE DEFENDANTS TREATED PLAINTIFF UNEQUAL AS AN AFRICAN/AMERICAN BY REFUSING TO PROCESS, FILE OR INVESTIGATE HIS COMPLAINTS AS A RESULT OF THEIR POLICY, CUSTOM AND PERVASIVE PRACTICE OF HANDLING ANY CRIMINAL COMPLAINT REPORTED AGAINST WHITE RACIST (DOCCS) EMPLOYEES BY AFRICAN/AMERICANS COMPLAINING OF RACIST GANG ASSAULTS.

[SEE, Plaintiff's Appendix Exhibit _K_ ,_N_ ].

56. Defendant J. Anthony Jordan clearly acted without a rational basis when he treated Plaintiff different from white inmates, or any white victim complaining of suffering a crime and wished to report it. The Defendant Jordan acts were taken to cut back on their work load, investigative duties and other responsibilities by their blanket policy to send Plaintiff's complaint to DOCS correctional lieutenants, so as to allow DOCS officials to cover up for each other, knowing DOCS never report back factual findings in a detailed manner. [SEE, EXHIBIT _I_ ,_M_ ].

57. Defendant Christopher Hall acted with conscious disregard to Plaintiff's health and safety, exercising racist animus based on Plaintiff being a black African/American who was litigating against pro-white prison officials, the Defendant knew it was dangerous for the Plaintiff to be transferred back to, and held at Greatmeddow during the course of this civil litigation or after it had been completed. Defendant Hall was aware of this based upon statements made by his client Silverberg, which he discussed

at the deposition, Guard did not like Plaintiff. ["SEE, DEPOSITION & SUMMARY Judgment motion by DEFENSE IN HILL v. LAPOIT, 12-cv-0202"].

58. DEFENDANT CHRISTOPHER Hall EXERCISED criminal RECKLESS judgment as a white bigot, knowing the Plaintiff a black african/american would be assaulted if held at GREATMEADOW. and, HE Knowingly ENCOURAGED FOR the Plaintiff to be placed there, condoning the actions of his client SILVERBERG to change Plaintiff's court ORDERED Hold to a medical hold to give the PRO-white Guards a chance to beat Plaintiff, with his client DOCTOR SILVERBERG clearning up FOR them by Removing all SICK Medical ENTRIES after the day of the incident and causing X-Rays and Radiology REPORTS to come up Missing. DEFENDANT Hall has not taken the same POSITION against white PRISONERS suing.
[SEE, Plaintiff's appendix EXHIBIT <u>A</u>, <u>F</u>, <u>O</u>].

59. DEFENDANTS ANNUCCI, BAUERSFELD, and NASSIVERA acted out of blatant discriminatory animus because Plaintiff is an african-american, and they are all white, the Plaintiff had conflict with their white co-workers who attacked him and falsified misbehavior REPORT against him, as an

act to deliberately cover up the racist gang assault. This is the precise reason(s) the defendants failed to credit plaintiff's testimony during the hearing and distroyed evidence that would corroborate his testimony. Defendant Bauersfeld racism and partiality is shown when he expressed to Hill, he once worked at Bradmeddow with these officers, and that his white father worked in Attica in the 70s... which is why he refused to call inmate witnesses to testify to what they saw and heard on the way to hearing, and about guards bragging on unit about how they had the tough nigger crying out for his mother. While he asked questions to guard.

60. The evidence that Defendant Annucci, Bauersfeld, Nassivera and intentionally allowed to be distroyed, was evidence tending to corroborate the plaintiff's testimony that he was racially gang assaulted by white prison guards, and Defendants did the following:

[i]. Prevented the defendant Nassivera, the inmate disciplinary assistant from obtaining written testimony from inmates who observed and heard acts of retaliation by white guards.

[ii]. Prevented Defendant Nassivera from producing officer's injury report, and from obtaining measurements and photos displaying the distance from the side of the table where the plaintiff stood, compared to where the hearing officer was allegedly sitting.

[iii]. All documents concerning the details of which guards had escorted plaintiff to the

hearing, and was present in the hearing room prior to assault and at time of assault.

[iv]. Further the defendants denied evidence and ignored detailed facts which illustrated it was totally impossible for the plaintiff to be facing the white prison official, holding onto him with his left hand while striking him in the right shoulder with his right hand. THUS **DENIED** INJURY REPORTS.

61. Defendant Laura Jones a PRO-WHITE PRISON GUARD EXERCISED Racist discriminatory animus, when she attacked plaintiff because he was black and had filed grievances against other white guards. Defendant Jones had pushed plaintiff into other inmates Ramming his testicles with her baton, knowing she had never carried out such conduct towards white inmates who filed grievances or law suits against the other white guard she shares loyalty with.
["Plaintiff's appendix EXHIBIT C, J ,___"].

62. Defendant Laura Jones EXERCISED indifference, where she treated plaintiff differently from white PRISONERS similarly situated, and intentionally and without Rational basis

filed a false business instrument accusing Plaintiff of Rule violations solely because he was a black African/American Prisoner, being housed at that facility to testify at a CIVIL trial against one of her WHITE CO-WORKERS. HER false REPORT IS IRRATIONAL WHERE she alleges that she sought to pat-frisk Plaintiff because she saw him pass an object to another inmate in the MESS Hall. But at no time sought to have this other inmate apprehended per security, and the box at the bottom of her REPORT indicates no other inmate involved.

("Plaintiff's APPENDIX EXHIBIT I, J.___).

63. AS a THIRD Cause OF action, the Plaintiff claims that he was "subjected to unnecessary and EXCESSIVE USE OF FORCE as a direct violation of his CIVIL Rights," pursuant to the 8th and 14th amendments OF THE UNITED states CONSTITUTION, and NEW YORK State Constitution article I, § 5. WHERE WHITE PRISON officials orchestrated an OPPORTUNITY to attack Plaintiff FOR FILING his GRIEVANCES and Law Suit.

64. THE Plaintiff CONTENDS he was Packed Up and brought to GREAT MEADOW CORRECTIONAL facility, as a holdover FOR court. and, the

tRIAL HE WAS ATTENDING WAS AGAINST AN EMPLOYEE WORKING AT THE FACILITY.

65. ON OR ABOUT MAY 21, 2015, DEFENDANT LAURA JONES EXERCISED INDIFFERENCE WHERE SHE SHOVED THE PLAINTIFF FORCEFULLY SEVERAL TIMES PUSHING HIM INTO OTHER INMATES FOR NO SOUND REASON, SHE THEN RAMMED HER BATON BETWEEN HIS LEGS JAMMING HIS TESTICLES CAUSING EXCRUCIATING PAIN. ["PLAINTIFF'S APPENDIX EXHIBIT ___ J ___ "].

66. DEFENDANTS EUGENE RAIMO, PAUL ZARNITSKI, JAMES HUNTINGTON AND JOHN SMITH KNOWINGLY, WILLINGLY AND WITHOUT JUST CAUSE USED FORCE AGAINST THE PLAINTIFF BY PUNCHING HIM IN THE TEMPLE, FACE, EYES, RIBS, THE BACK, SHOULDERS AND HEAD, KICKING HIM AND HITTING HIM WITH STICKS WHILE CALLING HIM MONKEYS AND NIGGERS. THEY DID THIS ON MAY 23, 2015, WITH THE HELP OF OTHER GUARDS.

67. DEFENDANT PAUL ZARNITSKI WAS CONTACTED BY THE GUARDS IN E-BLOCK CONCERNING MAKING THE ARRANGEMENTS TO CALL PLAINTIFF OVER TO HEARING OFFICE SO THEY COULD BEAT HIM. THEY ASKED THAT HE KEEP THE AREA SECLUDED TO WHICH HE AGREED AND ORDERED THE HEARING TO BE HELD.

68. DEFENDANT PAUL ZARNETSKI acting with CRIMINAL RECKLESSNESS, did designate EUGENE RAIMO, Huntington and others to Escort Plaintiff from E·8 company to the hearing ROOM knowing they planned to assault him. UPON COMMENCEMENT OF the hearing proceeding, the Guards stationed within the ROOM WERE not asked to identify themselves. As the Plaintiff testified MORE and MORE Guards ENTERED the ROOM to listen to his VERSION. When Plaintiff REQUESTED INMATE WITNESSES, DEFENDANT ZARNETSKI adjourned the hearing.

69. ZARNETSKI after turning off hearing Tape, told Guards they had FIVE MINUTES hurry UP. James Huntington punched Plaintiff **HE FELL** to the Floor and was KICKED IN the side of the head by RAIMO, he became dizzy and MOMENTARILY blacked out from the pain.

70. The Defendants brutally assaulted Plaintiff as a Gang of white BIKER TYPE Guards. DOZENS OF OTHER Guards Joined in. DEFENDANT Paul ZARNETSKI KICKED Plaintiff in the GROIN area, then on the side of the head SEVERAL TIMES. The Plaintiff heard DEFENDANT Huntington ENCOURAGING another Guard to assault Plaintiff saying, "Don't WORRY THERE IS no CAMERAS, no one will know, we do this all the time..."

71. THE Defendants shouted and cursed plaintiff calling him niggers and monkeys. However, it was Raimo's comments to another guard striking plaintiff, that plaintiff was the type who likes to file grievances and law suits, but lost, he didn't win, he loss. Raimo shouted bashing his fist into the plaintiff's face and eye. This statement illustrates the defendants' awareness of civil trial concerning silverberg. and, did cause serious pains, swellens, bump to the side of head, swollen eyes, temples, chest and bruises to ribs, sternum, concussion symptoms and aches and pains in all areas of injuries.

72. AS a FOURTH CAUSE OF ACTION, THE Plaintiff claims that he was " SUBJECTED to false misbehavior report written in retaliation to violate his civil rights." pursuant to 1st and 14th amendments of the united states constitution. and NEW YORK state constitution article I, § 8 and 9.

73. Defendant Laura Jane exercised indifference where she intentionally lied in a misbehavior report to punish plaintiff for his grievances and law suit. She knew she was preventing him from having access to the law library.

as well as placing him in the position to be beaten. STILL SHE WROTE it alleging he passed an object to an unknown inmate. although, at the bottom of the report she stated no other inmate was INVOLVED. and, NOR did she have any OTHER Inmate apprehended to RECOVER this alleged item which is Mandated by SECURITY PROTOCOL. [" Plaintiff's appendix Exhibit ᒪ, J, ___ "].

74. Defendant Laura Jones cannot allege factually that in good faith she had PROBABLE cause to FRISK Plaintiff. and that INSPITE OF HER EVIL MOTIVES She would have WRITTEN the REPORT anyways, because the ENTIRE EVENTS in it is false EXCEPt Plaintiff was escorted back to his cell hand cuffed. THE charges and REPORT WERE SOLELY drafted to get the Plaintiff into hearing ROOM to beat him. [" Plaintiff's appendix Exhibit ᒪ, D, J "].

75. Defendant Raimo on behalf of Paul Zarnetski Picked false charges he wanted planted in a facility report. and WROTE false details to Retaliate against Plaintiff by increasing his Pain and Punishment on top of the assault for filing GRIEVANCES and Law suit. he was BEING held at the facility FOR THE PURPOSE Of going to trial

against Defendant HOWARD SILVERBERG.
[" Plaintiff's Appendix Exhibit B , D , H , L , O ,  "]

76. Defendants Anthony Annucci, and
was made aware that the REPORT WRITTEN by
Raimo was false to cover up the racist prison
Guard gang assault, which occurred in Retaliation
for Plaintiff's grievances and law suit.
Still, they granted several unreasonable
Extensions due to Raimo being out on the
Sort team tracking escaped convicts in
Clinton. This forced the Plaintiff to
Remain in isolated confinement for over
("8") days without any inmate witnesses
being called. This was done solely to punish
Plaintiff for his grievance alleging Appeal
System Racist and Suit against Albert Prack.

77. Defendants Anthony Annucci and
Both Reviewed the Report, and was conducting
Investigations based on being contacted
about the events surrounding the hearing
Proceedings. After being advised the Report
was false to cover up the Gang assault
by Racist Guards, they opted to side with
their PRO-WHITE Staff MEMBERS, deeming
Plaintiff had to be PUNISHED for filing
his grievances and law suit over at
GREATMEADOW.

78. AS a FIFTH CAUSE OF ACTION, the Plaintiff CLAIMS that HE was "SUBJECTED DISCRIMINATIVELY to PROCEDURAL & SUBSTANTIVE DUE PROCESS VIOLATIONS based On his RACE" Pursuant to the 5th and 14th AMENDMENTS, and NEW YORK State Constitution ARTICLE I, § 1, 5, 8, 9, 11.

79. DEFENDANTS ANNUCCI, BAUERSFELD RAIMO, NASSIVERA, and the State OF NEW YORK did deliberately WITH CRIMINAL RECKLESS Intent SUBJECT the Plaintiff to undergo harsh, arbitrary FORMS Of CONFINEMENT. Plaintiff while Placed In both GREATMEADOW and then AUBURN (SHU) was under EXTREME ISOLATION. HE was PREVENTED FROM completing A.R.T. Rehabilitative Programs that was to PREPARE him FOR RELEASE. NO Radio to hEAR the news so as to be aware of CURRENT EVENTS IN SOCIETY. Such as POLICE KILLINGS In black neighborhoods. and HE was transferred to SOUTHPORT FACILITY D-block ISOLATION UNIT. HE was PREVENTED all communication with any OTHER INMATES, forced to always have On CUFFS whether INFRONT or back. Only EXERCISE was LIMITED to a dog cage chained and CUFFED. Plaintiff's PERSONAL PROPERTY was destroyed In RETALIATION to PREVENT hygiene care, and he LOSS the OPPORTUNITY to communicate with assigned counsel, and family to RE-Establish BROKEN TIES — and was SUBJECTED to harassment from Guards and staff in (HILL v. GRIFFIN, 11-CV-6101 WDNY).

80. DEFENDANTS Anthony ANNUCCI, BRIAN

Bauersfeld, K. Nassiverd, Raimo and the State of New York deprived the Plaintiff of his Right to be free from Restraints which ... imposed atypical [abnormal or uncommon] and significant hardship by being physically confined in isolation, physically held in waist chains, hands cuffed behind back, and housing on a unit with mental health patients that stink and yell all day and night committing suicide, preventing plaintiff from sleeping and concentrating on filing this law suit.

81. Plaintiff asserts that the substantive due process requires that the government treat prisoners with "fundamental fairness" and not interfer with liberty interest unless absolutely necessary. and, when they seek to restrict a prisoner's substantive rights, procedural due process guarantees that certain procedures must be followed Equally, without discrimination.

82. Defendant Brian Bauersfeld, exercised indifference where he commenced the hearing proceedings upon the misbehavior report written by the Defendant Eugene Raimo denying the Plaintiff his Right

to adjudicate assistance. Defendant Kevin Nassiver'd the selected Inmate disciplinary assistant did not report back to the Plaintiff with any of the documents and things he sought to use in preparing and presenting a defense. a defense based on defendant Raimo retaliation for grievances, and filing of report to cover up the Racist prison guard gang assault initiated by him. ["see, Plaintiff's appendix exhibit D.Q. also, assistant requests and selection sheet"].

83. Defendant Bauersfeld willingly exercised indifference, and acted in further ance of the retaliation, because as he had said, he had worked in Greatmeadow with these officers, and his father had been a guard in Attica back in the 70's. Therefore, he placed himself in the position to play dual roles, as (hearing officer) and (inmate disciplinary assistant). The conflict he caused was obvious, and it did eliminate any pretense of fairness. By him acting as the Plaintiff's assistant to gather evidence he could use to fight the accusations of wrong doing, which he refused to fully do, and actually limited what Plaintiff could receive, denying relevant items that are generally given to any other inmate charged. Such as Photos of incident area, guards injury reports, etc, which are necessary to support the kind of defense presented herein. ["see, Plaintiff's appendix exhibit D.Q. also hearing transcripts"].

84. Plaintiff argued that the misbehavior report was extremely vague and failed to give the

Required notice Mandated by Law. It failed to state the following information:

[A]. The Location of the incident was vague where Great Meadow Correctional Facility has three hearing Rooms in the court House, which one the hearing Rooms that the events occurred in is Required to give notice.

[B]. The Report charges disobeying direct order but does not indicate that any order was given.

[C]. The Report charges interference but fails to indicate who was interfered with and how., and

[D]. The Report charges violent conduct, but gives an irrational description of Plaintiff standing straight up, Reaching across an unspecified distance Pulling the Defendant Zdrnetski up with both hands on his shirt. Then punching him in the Right Shoulder with his Right hand. This is totally irrational because if the Plaintiff was face to face with Zdrnetski his Right would be targeting the left shoulder.

85. Defendant Anthony Annucci is Responsible for Reports, communications from hearing Officer and the other items he designated his subordinates to assess Regarding

the Patterns of prison guards assault at Greatmeadow. and, the fact he found them not to be justifiable cause to remedy the abuse to plaintiff by expunging and dismissing the ticket. which illustrates he acquiesced, condoned, encouraged and assisted the actions of Raimo in the harsh, arbitrary and discriminatory treatment to punish plaintiff in retaliation.

86. DEFENDANTS Bakersfeld and Nassivera deliberately deprived the plaintiff of his DUE PROCESS rights by Refusing to question witnesses and bring back their statements as requested. and further by failing to independently verify any refusals to testify by requested witnesses, especially where it was known guards had reason to intimidate inmates into not testifying. therefore, plaintiff was deprived of: [1.] notice of the charges; [2.] his limited right to call witnesses, [3.] right to present documentary evidence, [4.] right to inmate assistant; and [5.] a fair and impartial hearing officer, because he was black suing whites.

87. AS a SIXTH cause of action, the plaintiff claims that he was " subjected to denial of adequate Medical treatment, and tampering

WITH Medical Reports and X-Rays in violation
of Plaintiff's civil Rights." Pursuant to
8th and 14th amendments of the united
states constitution, and NewYork state
constitution article I, § 1, 5, and 11.

88. Defendant HOWARD SILVERBERG a Pro-
white PRISON Employee assigned to
GreatMeadow CORRECTIONal facility under
contract. Exercised deliberate indifference
where from July 16, 2011, up to SEPTEMBER
29, 2011, he provided no Medication to
the Plaintiff, who was scheduled to see
him — but was not allowed due to
nursing staff falsifying Medical records
on July 19, 2011, indicating Plaintiff
had Refused to show up. Defendant
SILVERBERG caused Plaintiff to go
untreated all that time by not following
his Required policy to verify Refusals
and explain consequences.
["Plaintiff's appendix exhibit E, F, I, O "].

89. Defendant HOWARD SILVERBERG Exercised
indifference towards Plaintiff's health
and safety, where he knew on July 19, 2011,
Plaintiff had a call out to see him,
and again on SEPTEMBER 14, 2011, to which
guards intervened falsely Reporting

to nursing staff that the plaintiff refused to show up to the infirmary for examines. However, the defendant did not direct nursing staff to follow up on it in accordance to refusal protocol, to verify the refusal and advise the plaintiff of the consequences of the risk to his health.

90. Defendant Howard Silverberg deliberately false diagnosed plaintiff's conditions, randomly picking any (three) symptoms he believed fit black males, which it was obvious plaintiff was not suffering from either. Still Silverberg proscribed a medicine to treat conditions he knew plaintiff did not have. His false diagnoses and prescription of medicine were essentially instructions to the nursing staff directing their treatment be limited to the false conditions, thus, causing intentional mistreatment. ["Plaintiff's appendix exhibit I, O, __"].

91. Defendant Howard Silverberg exercised willful disregard where he ignored all plaintiff's complaints to him, and his supervisor that the medication he gave plaintiff was not working, and

INSTEAD MAKING HIS CONDITION WORSE. PLAINTIFF WROTE VARIOUS COMPLAINTS AGAINST HIM TO THE NURSE ADMINISTRATOR M. HARRIS WHO WAS IN CONTROL OF THE INFIRMARY. EACH TIME SHE ANSWERED ALL OF THEM SCHEDULING APPOINTMENT WITH SILVERBERG, WHICH THE DEFENDANT REFUSED TO SEE PLAINTIFF ON ABOUT FOUR OCCASSIONS BASED ON THESE COMPLAINTS, AND THE GRIEVANCES WHICH WERE FORWARDED TO THE SAME NURSE ADMINISTRATOR TO INVESTIGATE.
[ SEE, APPEAL SUBMITTED AND ATTACHED EXHIBITS TO HILL V. LAPOH, 12-CV-0202 ].

92. AS A RESULT OF SILVERBERG'S ACTIONS THE PLAINTIFF BEGAN VOMITING BLOOD, DEFECATING BLOOD, URINATING BLOOD AND SUFFOCATING DURING HIS SLEEP. BASED ON HIS COMPLAINTS AND REQUESTS FOR EMERGENCY SICK CALL, A NURSE KIMBERLY LIPKA EVALUATED PLAINTIFF SEEING HIS SKIN HAD TURNED PINK, AND NEED FOR HIM TO BE PLACED ON WATER DIET. SHE IMMEDIATELY DIAGNOSED PLAINTIFF AS SUFFERING FROM ACID-REFLUX. AND HAVING BEEN GIVEN A MEDICATION BY SILVERBERG THAT WAS EATING THE LINING IN HIS STOMACH CAUSING INTESTINAL BLEEDING. THIS NURSE CHANGED THE MEDICINE AND HAD PLAINTIFF TALK TO A DOCTOR OTHER THAN

SILVERBERG. THIS WAS DONE ON DECEMBER 4, 6, 8, 20, 2011.
["PLAINTIFF'S APPENDIX EXHIBIT _I_, _O_, ___, ___"].

93. ON JANUARY 31, 2012, AFTER SILVERBERG REFUSED TO SEE PLAINTIFF AGAIN. PLAINTIFF FILED CIVIL SUIT HILL V. LAPOIT, 12-CV-0202, WITH A TRIAL COMMENCING ON MAY 4, 2015. DEFENDANT SILVERBERG AFTER TESTIFYING AT THIS TRIAL WENT BACK TO THE FACILITY SOME DAYS LATER AND CHANGED THE COURT ORDERED TRIAL HOLD INTO A MEDICAL HOLD PER HIM. THIS WAS DONE TO HOLD PLAINTIFF SO THE GUARDS COULD ASSAULT HIM AND HE COULD COVER IT UP BY TAMPERING WITH MEDICAL SICK CALL REPORTS AND X-RAYS.
["PLAINTIFF'S APPENDIX EXHIBIT _E_, _F_, _L_"].

94. DEFENDANT HOWARD SILVERBERG EXERCISED CRIMINAL RECKLESSNESS, AND HAD NO SOUND RATIONAL REASON FOR HIM PLACING PLAINTIFF ON MEDICAL HOLD. SILVERBERG EXAMINED BLOOD TEST, URINE TEST, AND E.K.G. LABS REPORTS FROM APRIL 15, 2015, TAKEN AT AUBURN CORRECTIONAL FACILITY AND HAD ALREADY BEEN REVIEWED AND DECIDED BY DOCTOR(S) THERE. NONE OF THE LABS REVIEWED HAD ANY SUBSTANTIAL SUBSTANCE ON PLAINTIFF'S POSSIBLE GASTRIC INTESTINAL DISORDER AND WAS TOTALLY UNNECESSARY

to cause plaintiff to be held under such conditions. This medical hold was only lifted after prison guards brutally gang assaulted plaintiff.

["Plaintiff's Appendix Exhibit  E , F  "].

95. Defendant Silverberg acted in furtherance of the racist prison guard gang assault by taken out medical sick call reports, and causing X-rays and X-radiological reports to disappear so the extent of plaintiff's injury would not be known, and could not be treated.

["Plaintiff's Appendix Exhibit  A , I , L , ___ "].

96. Defendant D. Jackson acted with obvious criminal recklessness, where on May 23, 2015, under the watchful eye of a video camera did not thoroughly examine the plaintiff, and failed to provide any medication for the pain, bruises, contusions, swellens, and severe headaches as a direct act to cover up for the guards racist assault by refusing to fully examine plaintiff and report his injuries which were totally inconsistent with guards allegations.

["Plaintiff's Appendix Exhibit  A , B , also see video tape displaying post use of force "].

97. DEFENDANT D. JACKSON EXERCISED DELIBERATE INDIFFERENCE, WHERE SHE CLEARLY ACTED WITH INTENT TO FALSIFY MEDICAL REPORTS ALLEGING SHE CHECKED PLAINTIFF'S BLOOD PRESSURE, PULSE, NEUROS AND HEART RATE. THE DEFENDANT FURTHER WROTE FALSE NUMBERS TO INDICATE THAT THE PLAINTIFF HEALTH UNDER THE CIRCUMSTANCES WAS EXCELLENT. AND, SHE ALSO INDICATED THAT SHE PROVIDED ICE FOR A LUMP ON PLAINTIFF'S HEAD. ALL HER ACTIONS WERE UNDER VIDEO CAMERA RECORDING, WHICH ILLUSTRATES SHE DID NONE OF THIS. SHE GAVE NO ICE, NO MEDICINE AND DID NOT CHECK PLAINTIFF'S VITALS. (SEE, EXHIBIT A, ALSO USE OFFORCE VIDEO).

98. AS A SEVENTH CAUSE OF ACTION, THE PLAINTIFF CLAIMS THAT HE WAS "SUBJECTED TO THE DELIBERATE FAILURE TO SUPERVISE, DISCIPLINE AND TRAIN..." DEFENDANTS ANTHONY J. ANNUCCI; J. ANTHONY JORDAN; COUNTY OF WASHINGTON; HOWARD SILVERBERG; AND THE STATE OF NEW YORK. EACH AS SUPERVISING OFFICIALS WERE MADE AWARE OF THE RACIST PRISON GUARD GANG ASSAULT, FALSIFYING OF BUSINESS RECORDS AND DENIAL OF MEDICAL TREATMENT, BUT DID NOTHING AT ALL — OR ACTED TO COVER IT UP. THESE ACTS WERE CONDUCTED IN VIOLATION OF PLAINTIFF'S CIVIL RIGHTS PURSUANT TO

the 1st, 5th, 8th, and 14th Amendments of the United States Constitution, and New York State Constitution Article I, § 1, 5, 8, 9, and 11.

99. Defendants Anthony Annucci and _____ being direct supervisors was aware, and did personally take actions when they ordered subordinates not to dismiss the fabricated report, and to grant multiple extensions to have plaintiff irrationally held under harsh conditions until an unavailable employee on the SORT TEAM whom the plaintiff had waived as a witness, show up to testify as a witness for hearing officer.

100. Defendants Anthony Annucci and _____ acted out of discriminatory animus in creating such policies against plaintiff only because he is an AFRICAN/AMERICAN and they are PRO-WHITE AMERICANS, the same as their co-workers who wrote the false report to cover up the assault. Defendants Annucci and _____ ............... reviewed the report, received comments from hearing officer and knew it was false, and still sided with their PRO-WHITE staff members deeming plaintiff must be punished for his

GRIEVANCES and LAW SUITS.
[" PlaINTIFF's aPPENDIX EXHIBIT B, G, H, O "].

101. Defendant J. Anthony JORDAN EXERCISED INDIFFERENCE WHERE HE created a blanket policy PROHIBITING the COUNTY OF WaShington OR any PERSONNEL In the OFFICE OF the DISTRICT ATTORNEy on the COUNTY behalf to FILE, PROCESS OR INVESTIGATE FELONY COMPLAINTS FOR RACIST PRISON GUARD assault. WHICH IS why he TURNED a blind EYE to the assault and COMPLAINTS FILED about It upon the PlaINTIFF.

102. DEFENDANT COUNTY OF WaShington Knowingly, WILLINGly, and RECKLESSly EXERCISED indifference by failing to TRAIN the INVESTIGATIVE PERSONNEL under Its CONTROL, to FILE, PROCESS and INVESTIGATE COMPLAINTS OF FELONY conduct against African/AMERICANS by PRO-WHITE PRISON GUARDS. This FAILURE to act caused PlaINTIFF's COMPLAINTS OF being being assaulted by RACIST WHITE GUARDS not to be INVESTIGATED by FRETTOIOSO.
[" PlaINTIFF's aPPENDIX EXHIBIT K, N "].

103. DEFENDANT COUNTY OF WaShington acts OF failing to TRAIN Its INVESTIGATIVE

PERSONNEL how to PROPERLY handle PROCESSING, filing and INVESTIGATING legitimate complaints FROM BLACK African/American PRISONERS against PRO-WHITE American PRISON GUARDS FOR RACIST assaults — which clearly PRESENTS their INVESTIGATIVE PERSONNEL with a difficult choice. THE SORT of choice that training OR SUPERVISION would have Made it less difficult to adequately Make...SO as to DETERMINE WHETHER GUARDS unlawfully committed Race CRIMES OR gang assaults against plaintiff.

## V. INJURIES SUFFERED BY PLAINTIFF

104. PLAINTIFF RE-alleges and INCORPORATES by REFERENCING PARAGRAPHS ("1- through-103"), as if fully stated HEREIN.

105. THE PLAINTIFF SUFFERED a FIRST amendment VIOLATION by defendants RETALIATION FOR grievances and law suit he was attending trial FOR IN the NORTHERN DISTRICT COURT on May 4, 2015.

106. THE PLAINTIFF SUFFERED PHYSICAL INJURIES FRACTURED STERNUM, SWOLLEN head with lumps and bumps, SEVERE MIGRAINE headaches, coughing up blood, shoulder pains FROM TORN ROTATOR cuff and concussion

PAINS. PERMANENT contusion to temple.

107. Plaintiff suffered Due Process violations by being denied adequate assistance, and having his guilt pre-determined by a hearing officer that partially played dual roles as inmate assistant / hearing officer. In this position he was able to pick out what documentary evidence and witnesses he wanted to give Plaintiff for his defense, knowing he would be making the decision of guilt or innocence on the report.

108. Plaintiff suffered racial discrimination by the defendants acting indifferent to him because of his race and skin color.

109. Plaintiff suffered all the above, and seeks relief for any other injury not mentioned herein, including the confinement based on false misbehavior reports, and whatever else the court may deem just and proper.

## VI. EXHAUSTION OF REMEDIES

110. The Plaintiff, has effectively utilized the administrative appeal mechanism exhausting grievances. He appealed to C.O.R.C. when allowed to, and did write

FORMal complaints to the DISTRICT ATTORNEY'S OFFICE. HE also WROTE complaints, and appeal to the central OFFICE.

## VII. RELIEF REQUESTED

WHEREFORE, THE Plaintiff HUMbly PRays that the COURT ENTER JUDGMENT GRANTING HIM the following:

[111.] DECLARATORY JUDGMENT based upon acts and OMISSIONS DESCRIBED HEREIN that VIOLATED Rights UNDER the constitution and the laws of the UNITED States. Plaintiff has no Plain, adequate OR COMPLETE REMEdy at Law to REDRESS the WRONGS described HEREIN. HE has been and WILL CONTINUE to be IRREPARABLY INJURED by the conduct of the Defendants UNLESS this court grants the DECLARATORY and INJUNCTIVE RELIEF WHICH the Plaintiff SEEKS.

[112.] A PRELIMINARY and PERMANENT INJUNCTION ORDERING the county OF Washington, J. Anthony JORDAN, Anthony ANNUCI and tHE State OF NEW YORK TO:
[i]. ENFORCE a POLICY DIRECTING the PROCEDURES UNDER WHICH the county "MUST" tRain, and SUPERVISE tHEIR OFFICERS designated to

INVESTIGATE, PROCESS and FILE FELONY COMPLAINTS by PRISONERS against WHITE PRISON GUARDS.

[ii]. COMPEL THE DISTRICT ATTORNEY'S OFFICE TO INVESTIGATE all COMPLAINTS OF ASSAULT FROM 2011 TO DATE. ALSO TO CREATE POLICIES DEFINING CLEAR INSTRUCTIONS how to, and WHEN to ACCEPT PRISONERS COMPLAINTS ON RACIST PRISON GUARD gang ASSAULT and ESTABLISH THE CRITERIA FOR THEIR INVESTIGATION AS AN OFFICIAL PROTOTOL.

[iii]. A SYSTEM WIDE REVIEW OF EMPLOYEES FILES BE CONDUCTED UPON THOSE COMPLAINED OF COMMITTING ASSAULT, EACH OF THEM BE ORDERED TO RESIGN and EMPLOYEE FILES REFLECT SUCH. WITH NEW FORMS OF TRAINING GEARED TO ELIMINATE PRISON GUARD GANG MENTALITY, and RACISM.

[iv]. RECONSTRUCTION OF CORRECTION § 137 AS BEING RACIST and DISCRIMINATIVE TOWARDS BLACK and LATINOS BEING CHARGED by PRO-WHITE PRISON GUARDS. THEREFORE, NO LONGER SHALL A MISBEHAVIOR REPORT STAND AS SUBSTANTIAL EVIDENCE OF GUILT ALONE. THE ALLEGATIONS MUST BE CORROBORATED WITH SOME PROOF.

[V]. THat tHE DOCS's REgulations and RuLES SHall bE CHanged to indicate: Inmates May bE CONfined UPON tHE WRiting Of a MisbEHavIOR REPORT PROPERly EndORSEd by an ARea SUPERVISOR, but SHall REMain INNOCENt Of all CHaRgES INto SUFFICIENt PROOF to CORROBORate tHE CHaRgES has bEEN PRODUCE to a fact-finder.

[Vi]. a fact-finder IS PROHibiTED as to dual ROLES as aSSiStant fOR the SaME InMate aCCUSED OF RulE ViOlatiOnS — to which hE IS to Judge, and dETERMinE guilt OR INNOCENCE of that InMate.

113. COMPENSatORY DaMages against EACH Of tHE dEFENDants, JOINtly and SEPaRatEly in an aMOUNt SUFFICIENt to EQUal : $ 6,000,000.00

114. PuNitiVE DaMageS against EaCH OF tHE DEFENDants, JOINtly and SEPaRatEly IN aMOUNt SUFFICIENt to EQUal $9,000,000.00

115. PlaINtiff DEMaNds a JURy tRial tO BE HEld at tHE (SYRaCUSE) NORtHERN DiStRICT COURtHOUSE, 100 SouTH CliNtON StREET, SYRaCUSE, NEWYORK 13261. DUE to tHE SEVERE daMage CaUSED to PlaINtiff afTER PREVIOUS tRial.

116. PLAINTIFF SEEKS THE COSTS FOR THIS COURT TO HIRE AN EXPERT WITNESS — AND HAVE THE STATE PROCEED BY PRODUCING ALL INMATE WITNESSES.

117. PLAINTIFF SEEKS THE COST FOR THIS SUIT SEPARATE FROM ALL OTHER DAMAGES, FILING FEES, TYPING AND COPYING FEES, AND LEGAL ASSISTANT FEES. AS WELL AS ANY ADDITIONAL RELIEF THE COURT MAY DEEM, JUST, PROPER AND EQUITABLE.

## VII. VERIFICATION

118. I, MICHAEL HILL, BEING DULY SWORN AFFIRMS UNDER THE PENALTIES OF PERJURY, THE FOLLOWING TO BE TRUE & EXACT:

119. I AM THE ABOVE NAMED PLAINTIFF MOVING THIS COURT SEEKING RELIEF AGAINST THE DEFENDANTS FOR NEW YORK STATE AND FEDERAL CONSTITUTIONAL VIOLATIONS. I HAVE READ THE FULL CONTENTS OF THE COMPLAINT AND KNOW EACH AND EVERY ASPECT AS TO THOSE MATTERS STATED ON BELIEF AND INFORMATION, AND THAT AS TO THOSE MATTERS I BELIEVE THEM TO BE TRUE.

120. THE SOURCE OF MY INFORMATION IS

NORTHERN DISTRICT COURT documents, DOCUMENTS FROM THE DEPARTMENT OF CORRECTION & COMMUNITY SUPERVISION FILES, PERSONAL EXPERIENCE and ANSWERS TO LETTERS.

DATED: AUGUST   5, 2015
NIagaRa FALLS, NY 14301

FAITHFULLY SUBMITTED,
Michael Hill
- PRO-SE SIGNATURE -

SWORN TO BEFORE ME ON THE 2 2 th
day of July , 2015

NOTARY PUBLIC

George M. Pribulick Jr.
Notary Public, State of New York
Chemung County, No. 01PR6306798
Commission Expires June 23, 20 18